IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                             Case Nos.:    4:07-cr-14-RV-GRJ
                                                              4:10-cv-231-RV-GRJ

JORGE WILMAR GUARIN
MELCHOR

_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or
correct sentence pursuant to 28 U.S.C. § 2255. (doc. 108.)  The Government has filed
a response (doc. 113) and Defendant has filed a reply. (doc. 114.)  The case was
referred to the undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc.
R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of
the record and the arguments presented, it is recommended that the § 2255 motion
should be denied.

## PROCEDURAL BACKGROUND

On February 6, 2007, Defendant was charged in an eight count indictment with
various immigration related offenses. (doc. 15.)  Specifically, Defendant was charged
with: (count one) conspiracy to transport and harbor illegal aliens, import aliens for
purposes of prostitution and transport illegal aliens in interstate commerce for purposes
of prostitution; (counts two and three) transporting and harboring illegal aliens; (counts
four and five) importation of illegal aliens for purposes of prostitution, aiding and
abetting; (counts six and seven) interstate transportation for purposes of prostitution;

and (count eight) illegal reentry by a deported alien (*id.*; *see also* PSR at ¶¶ 2–6).[1]  On

May 14, 2007, represented by appointed counsel Armando Garcia, Defendant entered

a guilty plea to count eight of the indictment (doc. 28).  After a three day trial on the

remaining seven counts, the jury found Defendant guilty as charged (*see* docs. 35, 37,

38, 42).  Two interpreters assisted the defense at trial (docs. 31, 33, 34).

A Presentence Investigation Report ("PSR") was prepared prior to sentencing.

The PSR noted the existence of two identifiable victims and contained a separate, but

identical guidelines calculation with respect to each victim.  Defendant's base offense

level for counts one through seven was 14 (PSR ¶¶ 45; 58).  He received a four level

adjustment pursuant to U.S.S.G. § 2G1.1 because the offense conduct involved

coercion, and a two level adjustment pursuant to § 3A1.1(b) because of the vulnerability

of the victims (PSR ¶¶ 46, 47; 59, 60).  His adjusted offense level was 20 (PSR ¶¶

50;63).  However, pursuant to § 2G1.1(c)(1), because the offenses involved conduct

described in 18 U.S.C. § 2242 (sexual abuse), a cross reference to § 2A3.1 of the

guidelines applied (PSR ¶¶ 51; 64).  The application of the guideline pertaining to

criminal sexual abuse resulted in a significant increase to Defendant's offense level.

Defendant's base offense level under § 2A3.1 was 30, and after the two level victim

related adjustment, he had an adjusted offense level of 32 (PSR ¶¶ 52, 54, 57; 65, 67,

70).  With respect to count eight of the indictment, to which he had entered a guilty

plea, Defendant's total offense level was eight as there were no adjustments (PSR ¶¶

71–80).  After application of the multiple count adjustment, Defendant's total offense

---

[1]The specific facts comprising the offense conduct are set forth in the Government's brief on appeal (doc. 113-2 at 9–18), and the Defendant's PSR (PSR ¶¶ 10–36).  In brief, Defendant, a Columbian national living in Tallahassee, Florida, ran a prostitution business. The prostitutes were illegal immigrants who were required to have sex with men in order to pay off debts to the "coyotes" who had smuggled them into this country.  The offense conduct in this case involved two Guatemalan women (one of whom was married), who had only just made their illegal entries into the United States, and who, prior to meeting Defendant, believed that they were coming to the United States for jobs as waitresses or maids.  The woman escaped from Defendant days after their arrival in Tallahassee but not before being required to engage in prostitution with numerous men.

level was 34 (PSR ¶¶ 81–89). With a criminal history category of I (PSR ¶ 93), the applicable advisory guidelines range was 151 to 188 months.

The defense objected to the four level enhancement for coercion[2] and the cross reference (PSR ¶¶ 128–131), and to the lack of adjustment for acceptance of responsibility (PSR ¶¶ 136–137). There was also an objection to the supervisory adjustment, but this was resolved in Defendant's favor prior to sentencing (PSR ¶¶ 132–133).

Sentencing, which was originally set for August 20, 2007, was continued on several occasions upon motion by both the defense and the Government (*see* docs. 46–58). In the interim, Defendant filed a "Motion to Withdraw Current Defendant's Public Defender Counsel, and Application for a New One" (doc. 60). As grounds for his motion, Defendant cited miscommunication during the pre-trial phase of his case due to linguistic difficulties, and "ineffective services and diligences showed by [counsel] in ALL defendant's requirements" (*id*.).

Sentencing was ultimately held on December 15, 2008, with the assistance of another interpreter (docs. 62–64, 84). At the commencement of the hearing, Defendant orally withdrew his motion for application of new counsel and advised the court that he and counsel had come to an understanding and that he was now satisfied with counsel's representation (doc. 84 at 2–3).

After hearing argument from the parties, the district court overruled the defense objections to the lack of acceptance of responsibility adjustment and to the application of the cross reference guideline for criminal sexual abuse (doc. 84 at 18–19). The court noted that before the Government filed the substantial assistance motion (*see* doc. 61), Defendant was facing a guidelines sentence of 151 to 188 months, and that under such circumstances it would have sentenced him near the mid-point of that range to a term of 168 months (doc. 84 at 21). In consideration of Defendant's cooperation, it sentenced him to a term of 96 months imprisonment on counts one through seven and

---

[2]The significance of the § 2G1.1 coercion adjustment was eliminated by the application of § 2A3.1.

a concurrent term of 24 months imprisonment on count eight of the indictment (docs.
63, 65, 84 at 22).  Defendant was advised of his right to appeal and the time in which to
do so (*id*. at 24–25).

On appeal,[3] Defendant raised a single ground for relief, contending that there
was insufficient evidence to support his convictions on counts one through seven (doc.
106 at 4).  He conceded that he ran a prostitution business but maintained that the
evidence did not show that he conspired or aided and abetted to smuggle the women
into the United States, transport them across state lines or harbor them as illegal aliens
(*id*. at 9).  After reviewing the abundant evidence against Defendant, the Eleventh
Circuit affirmed (*id. at* 4, 15).

In the present § 2255 motion, Defendant raises a single ground for relief.  He
contends that counsel was constitutionally ineffective for advising him to proceed to trial
(doc. 108 at 4).  The Government opposes the motion.

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for
collateral attack on final judgments pursuant to § 2255 are extremely limited.  A
prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1)
violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3)
exceeded the maximum authorized by law, or (4) is otherwise subject to collateral
attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8
(11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of
constitutional rights and for that narrow compass of other injury that could not have
been raised in direct appeal and would, if condoned, result in a complete miscarriage of
justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations
omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v.

---

[3] Defendant was represented by Amy Weil, Esq. on appeal, pursuant to an
appointment by the Eleventh Circuit (doc. 97).

<u>Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981); <u>Hidalgo v. United States</u>, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>McKay v. United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." <u>Lynn</u>, 365 F.3d at 1232 n. 14 (quoting <u>Mills</u>, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." <u>Lynn</u>, 365 F.3d at 1234; <u>Bousley</u>, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to

[defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."  *Id*. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United

States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)).  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

**Defendant's Claim for Relief**

In the lone ground for relief raised in Defendant's motion, he alleges that counsel rendered constitutionally ineffective assistance for advising him not to plead guilty to counts one through seven but to go to trial on these counts because there was "no evidence" against him (doc. 108 at 4, 5).  Defendant asserts that were it not for this advice, he would have pleaded guilty and received a lesser sentence because he would have received a three level adjustment for acceptance of responsibility (*id*. at 4, 20).

To show a violation of his constitutional right to counsel, Defendant must demonstrate both that counsel's performance was deficient and that he suffered prejudice.  Strickland, 466 U.S. at 686.  Defendant's claim in this case affects not his guilt, but his sentence.  Thus, to show prejudice, he must establish that but for counsel's error, he would have received a lesser sentence.  *See* Glover v. United States, 531 U.S. at 203–04.

As discussed above, the issue of Defendant's acceptance of responsibility was a focal point at sentencing.  Defense counsel explained to the court that after the trial Defendant had "had his epiphany" and had accepted responsibility and cooperated (doc. 84 at 16).  Because of this, counsel urged the court to find that Defendant was entitled to a two level acceptance of responsibility adjustment under § 3E1.1.  The Government in turn recited a list of reasons that Defendant was not entitled to the adjustment, including the fact that Defendant put the Government to its proof at trial, that Defendant fled when initially approached by police, that in lieu of helping to recover "fruits of the offense," Defendant called one of his "customers" to tell him not to cooperate, and that Defendant's acceptance of responsibility did not come about in a timely fashion (doc. 84 at 16–17).  In overruling the objection, the court specifically noted that Defendant put the Government to its proof at trial by denying the essential factual elements of guilt (*id*. at 18).  The court did this without commenting on the other

factors identified by the Government that could have mitigated against application of the adjustment even with a timely guilty plea.[4]

Based upon comments by the district court at sentencing, Defendant has not shown that his sentence would have been any different even if the acceptance of responsibility adjustment was applied. In addition to overruling the defense objection to the lack of acceptance of responsibility adjustment, the court considered and overruled the objection to the § 2G1.1(c)(1) cross reference (doc. 84 at 19). After explaining its rationale for doing so, the court stated that "even if this objection were sustained, I would impose the same sentence because the harm to the victims would justify an upward departure or variance from the guidelines" (*id*. at 19–20). This comment is particularly significant because the application of the cross reference had the effect of raising Defendant's adjusted offense level by **twelve** levels, from 20 to 32 (PSR ¶ 50, 63, 70). Presumably, the court's statement regarding the imposition of the same sentence would have been equally applicable even if Defendant's advisory guidelines range had changed due to the application of an adjustment for acceptance of responsibility or any other guidelines adjustment.

Furthermore, in imposing sentence the court expressly noted that the guidelines were not binding upon it, that it had tailored the sentence to take into account the facts and circumstances surrounding this particular case, and that the sentence it imposed reflected the seriousness of the conduct and the harm caused to the victims while allowing for a reduction due to Defendant's cooperation (*id*. at 20, 22). The court stated in no uncertain terms that Defendant's conduct in this case was "horrendous," that the damage done to the two young ladies "cannot be restored," and that Defendant's crime was "a crime against humanity" (*id.* at 21). There is simply nothing in the record to

---

[4]The Defendant continued to contest the basis for his guilt and "put the Government to its proof" even when he was represented by a different attorney on appeal. Despite the fact that he had admitted his role in the offense, cooperated with the Government, testified against a co-conspirator and received a reduced sentence; the only claim raised on appeal was the sufficiency of the evidence (*see* doc. 106). Thus, he continued to challenge the factual basis for his conviction even at that juncture.

suggest that the court would have imposed a lesser sentence if the three level acceptance of responsibility adjustment had been applied. Therefore, Defendant has failed to show prejudice.

Defendant also claims that counsel told him that there was "no evidence" against him with respect to counts one through seven, but nonetheless asserts that he would have chosen to enter a guilty plea. Even if Defendant's assertion is correct, under the circumstances he describes, it is highly improbable that the district court could have accepted Defendant's guilty plea. Before accepting a guilty plea, Rule 11 of the Federal Rules of Criminal Procedure requires that the court determine that the plea is voluntary and that there is a factual basis for the plea. Fed.R.Crim.P. 11(b)(2) and (3). This typically requires an admission of guilt (*cf.* North Carolina v. Alford, 400 U.S. 25, 38 & n. 10 (1970) (finding no constitutional error in a court accepting a guilty plea from a defendant who maintains his innocence so long as there is a factual basis for the plea). A defendant has no absolute right under either the Constitution or Fed. R. Crim. P. 11 to have his guilty plea accepted by the court, and the court is within its discretion to refuse to accept such a plea. United States v. Dykes, 244 F. App'x 296, 298 (11th Cir. 2007)(citing United States v. Gomez-Gomez, 822 F.2d 1008, 1010 (11th Cir. 1987)). When a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against acceptance of the plea. Gomez-Gomez, 822 F.2d at 1011. Defendant's insistence that he was factually innocent likely would have been an impediment to a successful guilty plea, which further weakens his claim of prejudice.

Finally, the court notes that Defendant also claims that he requested that counsel negotiate with the Government with respect to a guilty plea, but that counsel told him that the Government would not accept a guilty plea unless he cooperated (doc. 108 at 20, 25). The clear implication is that Defendant would not have wanted to cooperate. Even if the court was able to accept Defendant's guilty plea despite his protestation of innocence, the assertion that he only would have accepted a plea agreement that did not require cooperation is in stark contrast to the extensive

cooperation he actually provided post conviction. In its Motion Concerning Substantial Assistance, filed on December 10, 2008, the Government noted that it had met with Defendant prior to trial in hopes that he would agree to plead guilty and assist the Government (doc. 61 at 2). It stated that Defendant had initially refused to cooperate, which caused the Government to expend countless additional hours and resources (*id*.). It was only after his conviction that Defendant began to cooperate, and at that juncture he provided information that was detailed and valuable enough to warrant the filing of a substantial assistance motion (*id*. at 2–3). Defendant provided extensive detailed (and corroborated) information about the organization, insight into the history and structure of the organization, and information about key individuals with whom he had direct dealings (*id.* at 2–3). Furthermore, Defendant knew that he had entered a guilty plea to the charge in count eight without having been required to cooperate. In any event, his assertion that he was somehow prejudiced by counsel's failure to secure a plea agreement for him that did not require cooperation is unfounded.

For all of the foregoing reasons, the court finds that Defendant has failed to establish that counsel's performance was constitutionally deficient or that he is entitled to relief. Therefore, his motion to vacate should be denied.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 108) should be **DENIED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 15th day of July, 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).